MATTER OF B—

In DEPORTATION Proceedings

A–10201175

*Decided by Board August 11, 1960*

Deportability—Section 241(a)(3), 1952 act—Charge not sustained where proximate causes of mental illness develop in United States despite hereditary predisposition toward mental illness.

Respondent's hereditary predisposition toward mental illness not conclusive on issue of whether psychosis manifested in the United States existed prior to entry. Where respondent has established that he was not afflicted with any specific mental disease or defect before arrival and that proximate causes of his having become a mental patient in the United States were his failure to make a satisfactory work and social adjustment and stresses accompanying an injury received in an automobile accident, he has carried the burden of proving that his mental illness did not exist prior to his admission to this country. Hence, deportation charge under section 241(a)(3) of Immigration and Nationality Act not sustained.

CHARGE:

Order: Act of 1952—Section 241(a)(3) [8 U.S.C. 1251(a)(3)]—Institutionalized at public expense for mental disease.

BEFORE THE BOARD

DISCUSSION: The special inquiry officer terminated the deportation proceeding and the case is before us on the appeal of the examining officer.

The respondent is a 30-year-old unmarried male, a native and citizen of Ireland, who was admitted to the United States for permanent residence on November 18, 1955. He had not previously resided in this country. At the time of the hearing in March 1960 the respondent was, and had been since April 1959, a mental patient at a state hospital. However, during that period he had been permitted some visits to his home. The special inquiry officer concluded that the charge was not sustained and terminated the proceeding. The sole issue to be determined is whether the respondent is deportable. For the reasons hereinafter stated, we concur in the special inquiry officer's conclusion.

8 U.S.C. 1251(a)(3) provides for the deportation of an alien who, within five years after entry, "becomes institutionalized at public

57

expense because of mental disease, defect, or deficiency, unless the alien can show that such disease, defect, or deficiency did not exist prior to his admission to the United States." Two payments for the support of the respondent totaling $25.00 were made by his brother. Since the full cost of the institutional care has not been paid, the special inquiry officer held that the respondent had become institutionalized at public expense but concluded that the respondent had established that the mental disease did not exist prior to his admission to the United States. Hence, the issue in this case resolves itself into whether the alien has established this factor.

A certification dated September 21, 1959 (exh. 4), by Dr. L—C—J—, senior psychiatrist at the hospital in which the respondent is a patient, shows that the respondent's illness was diagnosed as schizophrenic reaction, catatonic type. Dr. J— answered affirmatively question 7(a) on the form which reads: "In your opinion, was the alien afflicted with any mental disease, defect, or deficiency; * * * at the time of, or prior to, his last entry into the United States?" Question 7(b) reads: "If the answer to (a) is affirmative, please state further in detail the nature of the disease, defect, or deficiency and the reason for such conclusion." In answer to this question, there was no statement as to the nature of the mental disease, defect, or deficiency with which the respondent was supposed to have been afflicted at the time of or prior to his last entry, but the following answer appears: "This patient has been described by members of his family as being shy, retarded and showing poor judgment and a lack of sense of responsibility. He has a history of poor work and social adjustment both at home in Ireland and also in England, where he went to work for a few months." In answer to question 8(a), as to the basic condition or cause which resulted in the alien's present condition, Dr. J— stated: "Hereditary predisposition to develop mental illness." When these various answers are considered together, there was a failure to state, as required by question 7(b), any specific mental disease, defect, or deficiency existing at or prior to the respondent's entry and we can hardly consider as equivalent the opinion that there was some hereditary predisposition to *develop* mental illness.

The Service takes the position that schizophrenia is a condition which exists from birth although a person may go through life without its discovery if no symptoms of the illness develop. In other words, the argument is that the respondent was afflicted with schizophrenia at and prior to the time of entry. As we have indicated above, exhibit 4 contains no such claim.

In *Matter of S—*, 5—682, 684 (1954), it was contended that the development of a psychosis should be taken as evidence that the condition was a hereditary or constitutional matter. We said

that this was obviously not the intention of Congress as otherwise whatever was shown as contributing to the breakdown would merely be regarded as being merged in the real cause—the predisposition to insanity. We rejected the contention and stated that it is the proximate cause, resulting in the alien becoming a public charge, which is the important factor.

The special inquiry officer stated (decision, p. 6) : "A basic predisposition to insanity undoubtedly existed." The respondent was not charged in this proceeding with having been excludable at the time of entry because of being afflicted with psychopathic personality or a mental defect and even Dr. J—, in his certificate, does not mention any specific mental disease or defect existing prior to the respondent's admission. In view of what we have stated above, the question of whether there might have been a predisposition to insanity on the part of the respondent is obviously immaterial since the only pertinent inquiry is whether the respondent has established that his present mental disease did not exist prior to his admission to the United States.

The examining officer stated in his brief that *Matter of S—, supra,* is not analogous to the respondent's case because different statutory provisions are involved, citing *Matter of C—R—,* 7—124 (1956). It is true that the latter decision and the case of this respondent both involve a charge under 8 U.S.C. 1251(a)(3), whereas the deportation proceeding in *Matter of S—, supra,* was based on the ground that the alien had become a public charge within five years after entry, a ground now covered by 8 U.S.C. 1251(a)(8). In *Matter of C—R—, supra,* we pointed out the following distinction between cases arising under paragraphs (3) and (8) of 8 U.S.C. 1251(a). Under paragraph (8), an alien cannot be said to have become a public charge until a demand for payment has been made and until there has been a failure or refusal to pay for treatment accorded by the public institution. Under paragraph (3), there is no basis for terminating the proceeding as long as the full debt has not been discharged. In other words, this is a distinction which exists in determining whether an alien has become institutionalized at public expense or has become a public charge. However, that issue is not present in the respondent's case since the special inquiry officer concluded that he had become institutionalized at public expense. Where the question involved is whether the alien has established that the disease or factor resulting in his being institutionalized or becoming a public charge did not exist prior to admission to the United States, then the conclusions reached in *Matter of S—, supra,* are applicable to both paragraphs (3) and (8) of 8 U.S.C. 1251(a).

We have previously held that under 8 U.S.C. 1251(a)(3) the

burden of proof is upon the alien to establish that the mental disease did not exist prior to his admission to the United States (*Matter of W—*, 8—630 (1960)). We will next discuss the evidence relied on by the respondent to establish this burden of proof.

There is attached to the immigrant visa a report relating to the respondent's medical examination on September 15, 1955, which contains the statement that he was examined for a number of specifically stated physical and mental conditions including feeblemindedness, insanity, psychopathic personality and mental defect, and that the examination revealed: "No defect, disease or disability." The respondent is one of ten children. There is no history of mental illness with respect to his parents or any of his brothers or sisters. The respondent and one of his brothers testified that he never had a mental illness nor was hospitalized while in Ireland and that he was never mentally ill nor hospitalized in the United States until after an anjury in an automobile accident in the summer of 1957.

Exhibit 7 relates to the respondent's hospitalization from August 5 to August 8, 1957, in connection with the automobile accident mentioned at which time he had been thrown against the windshield and suffered a concussion. When he was admitted to the hospital immediately after the accident, he complained of a headache and of being dizzy and drowsy. Upon examination at that time, he was found mentally alert although somewhat slow in his responses. The report of this examination contains the further statements: "All cranial nerves are negative. The eyegrounds are negative, and deep tendon reflexes are equal and active with normal plantar responses and active abdominal reflexes."

Exhibit 8 is a memorandum by Dr. M—E—M—, the respondent's physician, and relates to his examinations of the respondent until about January 4, 1958. He stated that the respondent still complained of daily episodes of dizziness and frontal headaches, and that he has some insomnia. He stated that these symptoms are consistent with the injury; that he does not feel there is any severe underlying disturbance; and that it is his judgment that the headaches, dizziness and insomnia will gradually lessen and eventually clear.

It is apparent from the foregoing that the respondent was not considered as suffering from a psychosis on September 15, 1955, on August 5, 1957, or up to January 4, 1958. On the contrary, he appeared entirely normal on these occasions. Exhibit 6 shows that the respondent was a patient at a private hospital from June 30 to July 8, 1958; that there was a diagnosis of schizophrenic reactions; and that the medical file of the hospital showed no history of a previous illness of the subject. After careful review of the entire record, it is our considered opinion that the respondent has established that the mental disease did not exist prior to his admission to the

United States and that the proximate causes of his becoming institutionalized were his failure to make a satisfactory work and social adjustment in the United States and the stresses accompanying the injury received in the automobile accident of August 1957. It follows that the respondent is not deportable on the charge stated in the order to show cause, and the appeal of the examining officer will be dismissed.

**ORDER:** It is ordered that the examining officer's appeal be dismissed and that the special inquiry officer's order terminating the proceeding be affirmed.